Robert A. **HOLLIDAY**, Appellant,

v.

**CONSOLIDATED RAIL CORPORATION.**

No. 90–1189.

United States Court of Appeals, Third Circuit.

Argued Aug. 14, 1990.

Decided Sept. 14, 1990.

Rehearing and Rehearing In Banc Denied Oct. 15, 1990.

Cornelius C. O'Brien, III, Patrick T. Henigan (argued), O'Brien & Henigan, Philadelphia, Pa., for appellant.

Jonathan F. Altman (argued), Consol. Rail Corp., Philadelphia, Pa., for appellee.

Before MANSMANN, GREENBERG and SEITZ, Circuit Judges.

OPINION

GREENBERG, Circuit Judge.

Plaintiff Robert A. Holliday appeals from an order for summary judgment entered February 28, 1990, in favor of defendant Consolidated Rail Corporation in this action under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* Our review is plenary and thus we may affirm only if there is no dispute as to any material fact and Conrail is entitled to judgment as a matter of law. *Metzger v. Osbeck*, 841 F.2d 518, 519 (3d Cir.1988).

Viewing the facts most favorably to Holliday, we accept the following for purposes of this appeal. Holliday was first employed by Conrail in 1979 as a brakeman. Within one year he was promoted to yard conductor but was furloughed in 1980. In 1986 he was recalled by Conrail and in the fall of 1987 was serving as a brakeman at the Port Reading, New Jersey, terminal and at industrial sites along the Port Reading line. At that time Holliday was informed that he would be held out of service until he qualified as a conductor on the Port Reading line. While brakemen and conductors sometimes do similar work, conductors are in charge of trains and, unlike brakemen, must be familiar with the physi-

cal characteristics of the lines on which they work.

To qualify as a conductor, Holliday worked on the Port Reading line with a pilot on October 28 and October 29, 1987. He also worked with a pilot on another line on November 6, 1987, though by then he had worked without a pilot as a conductor. Holliday, however, did not become familiar with the track on the Port Reading line or the switching thereon. Furthermore, he was not examined by a Conrail official regarding his knowledge of the physical characteristics and switching of the tracks on the line, nor did he receive a notation in his rulebook that he was a qualified conductor.

On November 3, 4, 5 and 9, 1987, Holliday worked as a conductor on the Port Reading line without a pilot. However, this was over his objections as he did not consider himself qualified in that capacity, a conclusion he has supported in this case with expert testimony. While serving as a conductor Holliday was not involved in any accident, though he frequently threw the wrong switches and, on one occasion, was almost crushed during a switching operation.

The stress of the job adversely affected Holliday, as he started to experience heart palpitations, sleep disorder including nightmares of train wrecks and injuries, spastic colon, tenesmus, involuntary rectal discharge, anxiety and depression. His condition rapidly progressed so that when he completed service on November 9 he could no longer work and he sought the advice of a physician. There is evidence that his physical problems and psychological disorders were attributable to his fear of causing an accident and of being injured. Holliday did not work for Conrail for several months after November 9 but he then came back as a brakeman. However, he did not continue in that employment as his spastic colon, involuntary rectal discharge and tenesmus returned.

On September 20, 1989, Holliday filed this FELA action against Conrail, alleging that at "the time of the accident and the injuries [he] was employed by [Conrail] as a brakeman" and on or about November 3, 1987, "was injured due to being forced to work on a job that he had not been 'qualified' for." Holliday asserted that the "accident was caused by the negligent and/or unlawful conduct of [Conrail]."[1] Conrail subsequently moved for summary judgment, pointing out in its supporting memorandum that Holliday made no claim of having been involved in an "accident" as he suffered "no actual physical impact ... to produce an injury." Thus, his condition was simply attributable to the working conditions. The district court granted summary judgment by an order entered February 28, 1990, without an opinion, and this appeal followed.

On June 1, 1990, the district court filed a memorandum opinion explaining why it had granted summary judgment. It rejected Holliday's claim "that the cause of his stress was the fact that he was almost involved in some kind of accident during one of the trips that he made without a pilot," as it viewed the depositions as not supporting this conclusion. The court explained that if "it was fear of imminent impact that was the cause of [Holliday's] claimed injuries then it was [Holliday's] obligation to get that onto the record in a form that is cognizable by a court that is deciding a motion for summary judgment, merely claiming it in his brief is not enough." The court then held that the physical manifestations of the injuries were not in themselves sufficient for Conrail to be liable. Ultimately, the court concluded that:

A fair reading of the evidence in this case taking all inferences in favor of the plaintiff and resolving all questions of credibility in his favor indicates that: 1) the plaintiff thought he was unqualified for the job he was doing; 2) he had a very responsible and important job; 3) he never did undergo a test to see if he was familiar with the physical characteristics of the railroad; 4) failure of the conductor to do his job properly could cause a

---

**1.** Conrail asserts that Holliday never worked in any territory in which he was not qualified.

While this may be true, we accept Holliday's contrary contention on this appeal.

serious accident; and 5) these facts made the plaintiff deeply afraid. This is insufficient to support a claim under the FELA. It was for these reasons that I entered summary judgment for the defendant.

Undoubtedly, the Federal Employers' Liability Act provides a broad basis for recovery, as it recites that "[e]very common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. § 51. Yet it is evident from the Supreme Court opinion in *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987), that it is not clear that the FELA was intended to provide for a recovery in a situation such as that here. In *Buell* an employee brought a FELA action in district court, alleging that the railroad was liable to him because he had been harassed, threatened and intimidated on the job, causing him to suffer "a mental breakdown, and certain associated physical disorders." *Id.* 107 S.Ct. at 1413. The railroad moved for and obtained summary judgment on the ground that the action involved a minor dispute subject to the procedures of the Railway Labor Act. The Court of Appeals reversed, holding that the employee's claims were not arbitrable under that act and that the FELA action was therefore not precluded. *Buell v. Atchison, Topeka and Santa Fe Ry. Co.*, 771 F.2d 1320 (9th Cir.1985). Furthermore, though the issue had not been briefed, the Court of Appeals indicated that an employee's wholly mental injury stemming from railroad employment is compensable under the FELA.

The Supreme Court granted certiorari. 476 U.S. 1103, 106 S.Ct. at 1946, 90 L.Ed.2d 356 (1986). It rejected the railroad's arguments that the Railway Labor Act provides the exclusive forum for any dispute arising out of working conditions and that emotional injuries should not be actionable under the FELA because of their close relationship to minor disputes under the Railway Labor Act. 480 U.S. 557, 107 S.Ct. 1410, at 1415, 94 L.Ed.2d 563 (1987). These conclusions, however, did not resolve the question of whether the term "injury" within the FELA included emotional injuries. The Court indicated that "[t]he question whether 'emotional injury' is cognizable under the FELA is not necessarily an abstract point of law or a pure question of statutory construction that might be answerable without exacting scrutiny of the facts of the case." 107 S.Ct. at 1417. Thus, "whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." *Id.* In the circumstances, it declined to determine whether the employee's claim was cognizable under the FELA as the facts of the case had not been adequately developed. Accordingly, the judgment of the Court of Appeals was vacated on this point.

Unlike the Supreme Court in *Buell*, we have a record permitting us to make an exacting scrutiny of the facts of the case and thus the matter is ripe for determination. The essence of Holliday's claim is that he was inadequately trained as a conductor and, as he was thus unqualified for that position, he suffered stress with resultant physical manifestations when he worked as a conductor. Holliday does not contend that he was in an accident with physical impact, that there was an injury to any other Conrail employee or for that matter to anyone else, or indeed that there was any accident at all. We must make the legal determination of whether in these circumstances he has established facts which could justify a finding that he suffered an "injury" within the meaning of 45 U.S.C. § 51. Our inquiry in this regard, as directed by *Buell*, particularly focuses on the "nature of [his] injury and the character of the tortious activity." 107 S.Ct. at 1417.

We have not previously passed upon a case similar to this, but the district court recently did so in *Kraus v. Consolidated Rail Corp.*, 723 F.Supp. 1073 (E.D.Pa.

1989), *appeal dismissed,* 899 F.2d 1360 (3d Cir.1990), an action involving emotional injuries including physical conditions attributed to job stress. There four former railroad employees brought actions against Conrail alleging that they suffered these injuries as a result of Conrail's failure to provide them with a safe workplace. However, none of the employees asserted that he had been involved in an accident resulting in direct physical injury. Rather, their allegations were that their ailments were caused by heavy workloads, chaotic working conditions, safety and operating rule violations, reductions in force, introduction of computers, loss of lunch and rest breaks, and institution of disciplinary actions. 723 F.Supp. at 1075–76. The district court, after an extensive review of federal and state opinions, granted Conrail's motion for summary judgment, holding that the conduct that has led to the evolution of the tort of negligent infliction of emotional injuries was "simply not the type of conduct alleged" in the case. *Id.* at 1089. Rather, such actions in state courts have been limited primarily to those involving plaintiffs alleging specific physical contact. Furthermore, even in federal courts "where creative lawyering has expanded the limits of intentional and negligent infliction in the FELA context" plaintiffs have usually alleged physical impact on themselves or third parties or incidents of offensive conduct directed specifically at them. *Id.* at 1089–90.

The court then indicated that:

Recovery for negligent infliction of emotional distress in this case should be limited for the reasons so often outlined by other courts—namely, a fear of (1) incalculable and potentially unlimited damages, (2) a flood of litigation brought by disenchanted workers, and (3) fraud. These, at least, are the explicit reasons given by courts who might also sense— but cannot explicitly acknowledge—some problem with causation or foreseeability or, perhaps, some feeling that the plaintiff 'assumed the risk' of contracting

stress-related illnesses by voluntarily accepting stressful positions. Generally, these articulated and unarticulated views are reactions to the application of the 'thin skull rule' to claims where the offensive element is not a physical touching of plaintiff, nor the sight of injury or illness to another, but as Judge Posner wisely wrote, 'too much—not too dangerous—work.'

*Lancaster,* 773 F.2d at 813.[2] Indeed, plaintiffs in the case at bar were allegedly injured by performing the normal duties of their jobs as structured by management and as monitored by the union. As work rules and working conditions represent issues that are at the heart of labor-management negotiations, the court will not upset the delicate balance of the collective bargaining agreement absent a more compelling reason.

For these reasons, plaintiffs, who allegedly suffer from stress-related physical or purely emotional injuries or illnesses caused by their general working conditions, fail to state a claim under the FELA. Lawyers, doctors, bus drivers, police officers, laborers, and, yes, even judges, face stressful conditions every working day. To suggest that Congress intended to single out railroad workers (and seamen under the Jones Act) as worthy of special protection from such stress would be pure folly. Job-related stress is simply not the type of problem intended to be dealt with by the FELA.

*Id.* at 1090 (footnotes omitted).

We are satisfied that whatever might be concluded in other circumstances involving claims for emotional injuries, the overall *Kraus* approach should be adopted here. In reaching this conclusion, we read the record with respect to Holliday's near accident somewhat differently than did the district court. The near accident was described by Holliday in notes he made as a sort of diary, contemporaneously with the events in 1987, as follows:

---

2. *Lancaster v. Norfolk and Western Ry. Co.,* 773 F.2d 807, 813 (7th Cir.1985), *cert. denied,* 480 U.S. 945, 107 S.Ct. 1602, 94 L.Ed.2d 788 (1987).

while on duty 11–4–87 WJPR 32 my mind not on what it should be. I almost got crushed while working on trk. # 9 at Bakelite. Pressure was b[u]ilding up on me, at that time [.] Also I was thro[w]ing wrong switches, and I should have known better.[3]

App. at 127.

In an affidavit an expert witness explained that this event involved Holliday's being "nearly caught by close clearance." App. at 442. We think that a fair reading of the record supports a conclusion that his condition could be partially attributed to this incident, as it is reasonable to believe that his fear of accidents was based on his job experiences.

Nevertheless, we conclude that the fact that on one occasion Holliday was in physical danger is not a sufficient basis for us to permit his condition to be regarded as involving an "injury" attributable to the job. Even if a recovery could be allowed for emotional injuries without physical impact, the event described, which in itself involved no direct injury to Holliday, no physical impact and no accident at all, was not sufficiently consequential to support a recovery.[4] Railroad work requires employees involved in switching or other similar operating positions to be in close proximity to equipment capable of causing them physical injury so that any employee who does not keep his mind on his work can be injured.

We also acknowledge that Holliday's condition was not solely emotional, as he suffered from physical consequences attributable to his emotional state, but that circumstance does not alter our analysis. In *Buell* the Supreme Court noted that the employee had "physical disorders," thus suggesting that the Court did not consider their presence as precluding application of the analysis made in a case without physical manifestations of emotional distress in determining what constitutes an injury under the FELA. 107 S.Ct. at 1413. The physical manifestations, though obviously germane to the assessment of Holliday's condition, have no bearing on the character of Conrail's allegedly tortious activity.

Inasmuch as Holliday worked as a conductor without a pilot for only a few days and does not contend that Conrail was negligent in allowing him to work as a brakeman, a position he enjoyed, this case involves nothing more than a situation in which the stresses of the job over a very short period were too much for him. But surely employees in all walks of life are placed in difficult, tense job situations, sometimes for extended periods, so there was nothing unusual here. Overall, we are satisfied that while Holliday may not have been qualified as a conductor, Conrail's allegedly tortious activity in putting him in that position was simply an ordinary management decision and was not of such a character that his emotional reaction and related physical consequences constituted an "injury" compensable under the FELA. In this regard, we observe that the conductor's position was in some respects similar to his job as a brakeman. Furthermore, Holliday had some training to be a conductor, as he worked with a pilot for a few days. We also note that Holliday asserts

3. Holliday demonstrated considerable prescience in keeping these notes as he started compiling them on October 14, 1987, when he was told he would be held out of service until he qualified as a conductor. This was several weeks before he served alone as a conductor and thus was before November 3, 1987, the day that he claimed in his complaint that he was injured. He explained in a deposition that he kept them because he realized he was having a problem and he wanted to be able to look back and remember what had transpired.

4. Our decision is predicated on the nature of Holliday's injuries and the character of Conrail's activity. We nevertheless point out that there is

some question as to whether Conrail could be held responsible for the consequences of the close call in the crushing incident, since Holliday contemporaneously attributed that situation to his own lack of attention rather than inadequate training. Even an expert can be injured if he does not pay attention to his work. We further observe that many persons come close to being physically injured, *e.g.,* a near motor vehicle accident, without even contemplating making a claim. We do note, however, that Holliday produced an affidavit from an expert witness which indicates that Holliday told him that the incident was caused by his inexperience at the site involved.

that even the duties of a brakeman were emotionally too difficult for him, though he does not suggest he was not qualified for that position in which he contends he was "happy and content," for he indicates that:

> After treating with physicians for several months, Holliday attempted to return to work as a Brakeman. Upon his attempt to return to work, the spastic colon, involuntry [sic] rectal discharge and tenesmus returned. Holliday's doctors advised him to look for alternative employment. He has not worked for Conrail since March of 1988.

Appellant's Brief at 8 (references to appendix omitted).

We reiterate that the allegedly tortious activity did not result in a physical injury to another party which Holliday witnessed or indeed injury to another party at all. In fact, there was no accident. We therefore conclude that summary judgment was appropriately granted.

There is precedent to support our result. In *Adkins v. Seaboard System R.R.*, 821 F.2d 340 (6th Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 452, 98 L.Ed.2d 392 (1987), decided after *Buell*, a former railroad employee sued the railroad under the FELA for emotional distress, charging that it deliberately and premeditatedly conspired to have him terminated without regard for the consequences of its actions.[5] The Court of Appeals upheld the dismissal of the action as it concluded that the FELA "has not been applied to any intentional torts lacking any physical dimension such as assault." *Id.* at 341. While we realize that Holliday has characterized his claim as involving negligence rather than intentional wrongdoing, we find *Adkins* helpful as our concern under the FELA is whether Holliday suffered an "injury" within that statute. Certainly the fact that a railroad's conduct is "intentional" rather than merely "negligent" should not necessarily excuse

it from liability under the FELA, for the Supreme Court recognizes that the statute "has been construed to cover some intentional torts even though its text only mentions negligence." *Buell*, 107 S.Ct. at 1414 n. 8. Thus, at bottom, a decision rejecting liability for injuries derived from emotional causes can best be explained by focusing on the character of the injury to the employee rather than the nature of the railroad's conduct. Accordingly, *Adkins* supports our result to the extent that our decision is predicated on the impact of Conrail's alleged negligence on Holliday. Of course, it is also reasonable to conclude that if the allegedly intentional conduct by the railroad in *Adkins* could not be the basis for liability, that the less culpable acts of negligence advanced by Holliday cannot be either, as under *Buell* we consider the character of Conrail's activity in determining whether Holliday may recover. *See also Gillman v. Burlington Northern R.R. Co.*, 878 F.2d 1020 (7th Cir.1989);[6] *Hammond v. Terminal R.R. Ass'n*, 848 F.2d 95 (7th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 229 (1989).

Results similar to that in *Adkins* were reached by district courts in *Finn v. Consolidated Rail Corp.*, 622 F.Supp. 41 (D.Mass.1985), *aff'd*, 782 F.2d 13 (1st Cir. 1986), and *Moody v. Maine Central R.R. Co.*, 620 F.Supp. 1472 (D.Maine 1985), *aff'd*, 823 F.2d 693 (1st Cir.1987). The precedential value of those cases is limited, however, as in each the Court of Appeals affirmed on grounds not germane to the issue here and the district court opinions were rendered prior to *Buell*. Nevertheless the opinions are some support for our result.

We emphasize that our opinion is narrow. We are not holding that there can never be a recovery under the FELA for emotional

---

5. The *Adkins* court was aware of *Buell* and discussed it.

6. *Gillman* supports our result, though the district court adopted state law in determining whether a claim for negligent infliction of emotional distress could be sustained under the FELA, an approach not challenged on appeal.

878 F.2d at 1023. Judge Kanne concurred "but only on the grounds that no claim for relief for negligent infliction of emotional distress exists under FELA." 878 F.2d at 1025. We are deciding this case under federal law and thus the concurring opinion in *Gillman* is more significant to us than the majority opinion.

conditions unless the employee suffers an immediate physical injury from the railroad's negligent conduct, or unless there is at least an accident of some kind, as we need not and do not reach that issue. Thus, our holding does not draw a "bright line" requiring a direct impact traceable to the employer's negligence before there can be a FELA recovery. We are not called upon to decide whether an employee exposed to dangerous conditions for a protracted time, though not in an accident, could recover. But we hold that the facts in this case, considering the character of the allegedly tortious activity, *i.e.*, placing Holliday for a few days in a position in some ways similar to his prior assignment but for which he was unqualified, and the lack of direct, physical impact on him, when viewed in the light most favorable to him, cannot support a recovery.

We, along with the Court of Appeals for the First Circuit, "discern from the *Buell* opinion an attempt to leave the door to recovery for wholly emotional injury somewhat ajar but not by any means wide open." *Moody v. Maine Central R.R. Co.*, 823 F.2d 693, 694 (1987). We are encouraged to reach our result by the realization that if we hold that a railroad employee demonstrating some possible negligence with psychological consequences will always present a jury question in a FELA action, the most attenuated claims could be advanced. Indeed, a routine management decision not resulting in an accident could give rise to a claim by an employee for psychological injuries. We think that we must determine whether there may be a recovery, as the Supreme Court indicated in *Buell*, on the basis of the facts in the particular case being considered and that is what we have done. While a bright line is always cherished by judges and attorneys, the fact is that in some situations, as Judge Becker noted in a very different context in *United States v. Balascsak*, 873 F.2d 673, 685 (3d Cir.1989) (concurring opinion), "developing the law on a case-by-case basis and drawing lines depending on the facts is the stuff of judging...." We have developed the law in this case on that basis and the line we draw will not allow recovery.

The order of February 28, 1990, will be affirmed.

MANSMANN, Circuit Judge, dissenting.

Because I would find as a matter of law that the FELA permits a recovery for emotional distress and because I believe that Holliday has alleged facts sufficient to create a genuine issue as to whether Conrail's negligence caused him to suffer injury as a result of emotional distress, I would vacate the grant of summary judgment and permit the claim to be presented to a jury.

The remedial purpose of the FELA cannot be disputed. As stated by the Supreme Court in *Atchison T. & S.F.R. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987): "We have recognized generally that the FELA is a broad remedial statute, and have adopted a 'standard of liberal construction in order to accomplish Congress's objectives.'" 480 U.S. at 562, 107 S.Ct. at 1414. Therefore, because "FELA jurisprudence gleans guidance from common law developments, ... whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity." 480 U.S. at 568, 107 S.Ct. at 14.

The FELA carried forward the common law duty of requiring the railroad employer to provide a safe place for the employee to work. *See Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352, 63 S.Ct. 1062, 1063, 87 L.Ed. 1444 (1943) (under common law the "duty of employer to use reasonable care in furnishing his employees with a safe place to work was plain"); *Payne v. Baltimore & Ohio Railroad Co.*, 309 F.2d 546 (1962), *cert. denied*, 374 U.S. 827, 83 S.Ct. 1865, 10 L.Ed.2d 1051 (1963) (same). Thus, if an injury occurs because the railroad has failed to provide a safe workplace, the railroad has breached its duty and can be found liable for the foreseeable harm. *Ackley v. Chicago & Northwestern Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987) ("duty to provide a reasonably safe place to work, while measured by foreseeability standards, is broader under the stat-

**428**

ute than a general duty of due care"). I agree with the statement by our sister court of appeals in *Fletcher v. Union Pacific R.R.*, 621 F.2d 902 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981), that the duty to provide a safe workplace includes the duty not to assign an employee to a job for which the individual is not suited or prepared. 621 F.2d at 909. Simply stated, I would hold that the plaintiff has alleged sufficient facts to hold that Conrail created an unsafe workplace here by assigning an employee to a position for which he was unqualified.

The majority compares Holliday's complaint with those of four overworked and overstressed employees in *Kraus v. Consolidated Rail Corp.*, 723 F.Supp. 1073 (E.D.Pa.1989), *appeal dismissed*, 899 F.2d 1360 (3d Cir.1990). In *Kraus*, the district court noted that the plaintiffs had failed to allege outrageous conduct, an element of the tort of intentional infliction of emotional distress. The district court also rejected the plaintiffs' claims premised on negligent infliction of emotional distress, concluding that the stress was the result of general working conditions to which the plaintiffs subjected themselves by virtue of voluntarily undertaking their employment.

While Holliday has not alleged facts of outrageous behavior on the part of Conrail sufficient to support a claim for the intentional infliction of emotional distress, the facts demonstrate that his complaint was more than a mere disgruntlement with general working conditions. I would hold that the facts alleged illustrate the "subtle distinctions" referred to by the Supreme Court and distinguish Holliday's claims from those of the employees in *Kraus*. Indeed, and the majority does not dispute, Holliday alleged that he was not qualified for the position in which Conrail placed him, that he was not examined as to his qualifications and that he was required to work without the supervision of a qualified pilot on several occasions. During this time he found himself throwing the wrong switches and, at one point, he was almost crushed during a switching operation. This near miss, which the majority dismisses as being insufficient to support an injury

attributable to the job, indicates to me that Holliday had been placed in the "zone of danger" created by Conrail's negligent assignment of Holliday to a position for which he was not qualified. *See Palsgraf v. Long Island R.R.*, 248 N.Y. 339, 162 N.E. 99 (1928) (duty owed to those who are foreseeably harmed by the conduct in question). Moreover, Holliday's injuries were not limited to psychological distress but included substantial physical symptoms as well.

Because I believe that Holliday has alleged sufficient facts from which a rational trier of fact could conclude that his injuries were the result of Conrail's negligence in assigning him to a position for which he was not qualified, I would vacate and remand for a jury trial.