Salvatore B. CAPRIOTTI, Plaintiff,

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

Civ. No. 92–CV–1085 (FJS).

United States District Court,
N.D. New York.

March 14, 1995.

Martin, Martin & Woodward, Syracuse, NY (Donald J. Martin, of counsel), for plaintiff.

Hodgson, Russ, Andrews, Woods and Goodyear, Buffalo, NY (Benjamin M. Zuffranieri, of counsel), for defendant.

## DECISION AND ORDER

SCULLIN, District Judge:

### INTRODUCTION

This matter is before the court on defendant Consolidated Rail Corporation's ("Conrail") renewed motion for summary judgment. On December 18, 1992, this court denied defendant's motion to dismiss for failure to state a claim upon which relief can be granted. Subsequently, on February 15, 1994, Conrail's motion for summary judgment was denied with leave to renew. The court's decision on the summary judgment motion was based predominantly on *Carlisle v. Consolidated Rail Corp.*, 990 F.2d 90 (3d Cir.1993), from which, at the time, certiorari had been granted by the Supreme Court. In June 1994 the Supreme Court reversed *Carlisle. See Consolidated Rail Corp. v. Gotts-*

*hall and Carlisle,* — U.S. —, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994). Accordingly Conrail has renewed its motion for summary judgment.

## BACKGROUND

The facts of this case are relatively straightforward. Plaintiff, Salvatore Capriotti, 52 years old, worked as a yardmaster in the Dewitt train yard for Conrail. He had worked for Conrail since 1960. He suffered a heart attack in 1982 and again in 1983. In 1983 he had open heart surgery. He continued to work after both incidents.

Plaintiff alleges that he suffered increased heart problems in March of 1991 and was in and out of work through October 1991. He claims that from 1987 through 1991 Conrail cut back its staff causing him to take on more responsibility, more hours and more erratic schedules. In November 1991 Conrail unilaterally arranged for plaintiff's transfer to Buffalo. Immediately thereafter plaintiff went out on sick leave and has not returned to work.

Plaintiff claims that "[t]he cumulative effect of all these duties and responsibilities created an extremely stressful environment in which plaintiff was required to work." Complaint ¶ 8. Plaintiff further alleges that Conrail negligently instructed plaintiff "to work long hours and under stressful conditions" and was negligent in transferring him without prior notice. Complaint ¶ 13. Plaintiff claims that "[t]he duties and responsibilities ... together with the long hours of work, exacerbated or aggravated the plaintiff's heart condition," Complaint ¶ 9, and that he has suffered "personal injuries, he [has] experienced pain and suffering ... [and] the loss of the amenities and enjoyment of life." Complaint ¶ 15. He also claims that because of Conrail's negligence, "his heart condition worsened [and] that he suffers from exertional or stress related angina pectoris." Complaint ¶ 15.

## DISCUSSION

### I. THE FEDERAL EMPLOYERS' LIABILITY ACT CLAIM

#### A. STATUTORY BACKDROP

■ The Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, is a broad remedial statute that is to be construed liberally in order to effectuate its purposes. *Marchica v. Long Island R.R. Co.*, 31 F.3d 1197 (2d Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995). Section 1 of FELA, 45 U.S.C. § 51, provides in part:

> Every common carrier by railroad while engaging in [interstate] commerce ... shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce ... resulting in whole or in part from the negligence of [the carrier]....

■ This section "provides railroad workers not only with substantive protection against negligent conduct by the railroad, but also affords an injured worker a remedy untrammeled by many traditional defenses against tort liability." *Kulavic v. Chicago & Illinois Midland Ry. Co.*, 1 F.3d 507, 512 (7th Cir.1993). In this liberal spirit, the law requires only a minimum amount of evidence to establish liability under FELA. *See Harbin v. Burlington Northern Ry. Co.*, 921 F.2d 129, 131–32 (7th Cir.1990) (noting examples of FELA actions that were submitted to a jury based upon "evidence scarcely more substantial than pigeon bone broth"). The proof needed to get a case to a jury in a FELA case is merely whether "employer negligence played any part, even the slightest, in producing the injury." *Consolidated Rail Corp. v. Gottshall and Carlisle,* — U.S. —, —, 114 S.Ct. 2396, 2404, 129 L.Ed.2d 427 (1994) (quoting *Rogers v. Missouri Pacific R.R.,* 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)).

■ Nevertheless, FELA "does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur." *Gottshall and Carlisle,* — U.S. at —, 114 S.Ct. at 2404. In this respect, the traditional common law negligence elements of duty, breach, causation and damages are still applicable. *Moody v. Boston and Maine Corp.,* 921 F.2d 1, 3 (1st Cir.1990); *Robert v. Consolidated Rail Corp.,* 832 F.2d 3, 6 (1st Cir.1987).

It is under this statutory framework that plaintiff brings his claim.

## B. THE *CARLISLE* OPINION

Defendants base their renewed summary judgment motion on the *Carlisle* case. *Consolidated Rail Corp. v. Gottshall and Carlisle,* —— U.S. ——, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994).

In 1976 Carlisle worked as a dispatcher for Conrail, and was responsible for the efficient movement of passengers and cargo. Due to poor equipment and staff reductions the job was taxing and stressful. The workers often complained about safety problems. In 1988 Carlisle was promoted to trainmaster. With the promotion came more hours, responsibilities and stress. Carlisle began to experience insomnia, headaches, depression, and weight loss. After working a period of weeks of 12- to 15–hour shifts, he suffered a nervous breakdown. He sued Conrail under FELA for negligent infliction of emotional distress, claiming that Conrail breached its duty to provide him a safe work place by forcing him to work under unreasonably stressful conditions, which caused his illness.

The Third Circuit affirmed a district court ruling that allowed such a claim to go forward. The Third Circuit concluded that it was reasonably foreseeable that such unsafe conditions would lead to Carlisle's injuries.

The Supreme Court reversed, rejecting the foreseeability test and setting out a new test for emotional distress cases brought under FELA. *Id.* The Court first identified the type of injury involved, noting that Carlisle's injury was "mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but that may manifest itself in physical symptoms." *Id.* at ——, 114 S.Ct. at 2405. Then, looking to the common law of negligent infliction of emotional distress, the Court held that the right of recovery for such an injury is limited to plaintiffs who are within the "zone of danger". The zone of danger test limits recovery to those "who sustain a physical impact as a result of defendant's negligent conduct, or who are placed in immediate risk

of physical harm by that conduct." *Id.* at ——, 114 S.Ct. at 2406.

Applying the test to Carlisle's claim, the Court found that there was no event or occurrence that caused Carlisle to sustain physical impact or placed Carlisle in imminent risk of physical harm. "[T]he core of Carlisle's complaint was that he had been given too much—not too dangerous work—to do." *Id.* at ——, 114 S.Ct. at 2412. The Court ruled:

> We find no support in the common law for the [Third Circuit's] unprecedented holding, which would impose a duty to avoid creating a stressful work environment, and thereby dramatically expand employers' FELA liability to cover the stresses and strains of everyday employment. Indeed, the Third Circuit's ruling would tend to make railroads the insurers of the emotional well-being and mental health of their employees. We have made clear, however, that FELA is not an insurance statute.

*Id.* at ——, 114 S.Ct. at 2409.

## C. APPLICATION OF *CARLISLE* TO PLAINTIFF CAPRIOTTI'S CLAIM

■ Defendant claims that the *Carlisle* decision is on all fours with the instant case and is dispositive of the issues. Defendant perceives plaintiff's claim as one for negligent infliction of emotional distress, i.e., that plaintiff claims he suffered an exacerbated heart problem due to stressful work conditions. After *Carlisle,* only a plaintiff who was in a zone of danger can recover for such an injury. Because plaintiff does not allege any physical impact or imminent threat of physical harm, defendant argues, plaintiff's claim for emotional distress must be dismissed.

While plaintiff concedes that his claim for negligent infliction of emotional distress is no longer viable after *Carlisle,* he nonetheless contends that he has brought other claims that are not affected by *Carlisle.* Plaintiff argues that he has alleged that his heart condition was caused directly by defendant's negligent conduct. Plaintiff, in effect, contends that in a negligent infliction of emotional distress claim the physical manifestations of the injury are caused by the emotion-

al problem, while in a pure negligence case the physical injury is caused directly by the defendant's conduct. He argues that he has alleged both types of claims.

The Eastern District of Pennsylvania was faced with a similar contention in *Dennis v. Consolidated Rail Corp.*, No. CIV. A. 93–1915, 1994 WL 494453 (E.D.Pa. Sept. 7, 1994). In *Dennis*, a Conrail employee alleged a cause of action for, among other things, "negligent infliction of emotional distress arising from prolonged and unreasonably dangerous work related stress." *Id.* at *3. Because *Carlisle* was decided when Conrail's motion for summary judgment was pending, Dennis' counsel, "twisting in the legal winds," tried to recast Dennis' claim as one for a purely physical injury. *Id.* at *12. The court rejected such a devise, reasoning that the claim was indeed the same as *Carlisle*—a claim for too much, not too dangerous, work.

There were several reasons that led the *Dennis* court to its conclusion. First was the "magical transformation" of Dennis' claims. *Id.* Dennis had argued repeatedly that the pre-Supreme Court *Carlisle* case was analogous, if not identical, to her claims. Second, the court looked to the core of Dennis' claim. It noted that her claim was that she had been injured because of the "cumulative and excessive nature of the individual tasks she was required to perform." *Id.* Thus Dennis' claim, like Carlisle's claim, was that she had been given too much—not too dangerous—work. While the court noted that there may be some theoretical point where "non-actionable 'too much work' becomes actionable 'too dangerous work,'" it held that Dennis' claim did not reach that point.

Under the same reasoning, Capriotti's claim must fail. First this court notes that Capriotti's claim also underwent a magical transformation after *Carlisle*. What was once a claim "not very dissimilar" to Carlisle's, Plf.'s Mem. of Law at 11, is now allegedly very dissimilar. Plaintiff had previously devoted substantial pages of argument comparing his injuries to those in *Carlisle*, now he anxiously tries to distance himself from *Carlisle*, claiming instead that he suffers from a purely physical injury.

Notwithstanding plaintiff's chameleon-like allegations, his claim also fails on its merits. Plaintiff has not identified any particular condition existing at Conrail that was dangerous. Instead he argues that the cumulative effect of his duties and responsibilities and the long hours of work created a stressful environment which caused his injury. The core of his complaint then is identical to Carlisle: "that he had be given too much—not too dangerous—work to do." *Gottshall and Carlisle*, —— U.S. at ——, 114 S.Ct. at 2412.

The court is aware that Carlisle could have arranged his allegations to claim that his physical injuries were divorced from his emotional injuries. However, the core of his complaint would have been the same. "The court seriously doubts ... that the Supreme Court intended that the distinction between non-actionable claims of too much work and actionable claims of too dangerous work should turn upon the labels attached to such claims rather than the substance of those claims." *Dennis*, 1994 WL 494453, at *13. Because the substance of Capriotti's claim is the same as the claim in *Carlisle*, *Carlisle* is controlling. Here, because plaintiff has not alleged that he was within the zone of danger, his claim must fail.

## II. VIOLATION OF THE HOURS OF SERVICE ACT

The Hours of Service Act ("Act"), 45 U.S.C. § 61 *et seq.* statutorily limits how many hours a railroad employee can work consecutively. While there is no private right of action under the Act, *United Transp. Union v. Lewis*, 699 F.2d 1109 (11th Cir. 1983), plaintiff claims that he is entitled to recover under FELA because Conrail's violation of the Act amounts to negligence per se.

■ As an initial matter, Conrail contends that the Act only applies to "individual actually engaged in or connected with the movement of any train," 45 U.S.C. § 61(b)(2), and that plaintiff does not fit within this definition. The statutory language has been interpreted to mean that the employee must have duties that proximately relate to trains already in motion or about to move. *Jopek v. New York Central R.R. Co.*, 353 F.2d 778,

**434**

783 (3d Cir.1965). In the earlier motion for summary judgment, this court determined that because plaintiff has overall responsibility for the movement of trains in the Dewitt Yard, his duties proximately relate to trains in movement or about to move. *See* Transcript dated February 11, 1994, 92–CV–1085. Therefore, plaintiff is covered by the Act.

 The defendant next contends that if plaintiff cannot recover directly under FELA for his negligent infliction of emotional distress claim, then he cannot recover for that claim by alleging violations of the Act. The court agrees. Under a negligence per se theory, if a plaintiff proves that a statutory violation has occurred he need not prove the traditional negligence elements of foreseeability, duty and breach, but he is still required to prove causation. *Moody v. Boston and Maine Corp.*, 921 F.2d 1, 4 (1st Cir.1990). In this case, plaintiff does not seek to recover directly under the Act, but seeks to recover under FELA, and thus, despite invoking the relaxed standards of proof under negligence per se, he is still bound by the FELA parameters established in *Carlisle;* that is, as stated, in emotional distress cases the plaintiff must prove that he was within the zone of danger. Therefore, because plaintiff has not alleged that he was in the zone of danger, his claims must fail.

Therefore it is hereby

ORDERED that defendant Consolidated Rail Corporation's motion for summary judgment is GRANTED and plaintiff's complaint is dismissed.

Judgment should be entered accordingly.

**IT IS SO ORDERED.**