**John F. WALSH**

v.

**CONSOLIDATED RAIL CORPORATION.**

**Civil Action No. 95–5369.**

United States District Court,
E.D. Pennsylvania.

April 9, 1996.

Memorandum Denying Reconsideration
May 22, 1996.

(3) the district court has dismissed all claims over which it has original jurisdiction. . . .
28 U.S.C.A. § 1367(c)(3) (West 1993).

Allan J. Sagot, Philadelphia, PA, Michael H. Doran, Buffalo, NY, for John F. Walsh.

Walter L. McDonough, Richard L. Goerwitz, Jr., Joseph J. Centeno, Swartz, Campbell & Detweiler, Philadelphia, PA, for Consolidated Rail Corporation.

## *MEMORANDUM*

PADOVA, District Judge.

Plaintiff, John F. Walsh, filed a complaint against his former employer, Consolidated Rail Corporation ("Conrail"), under the Federal Employers Liability Act, 45 U.S.C.A.

§§ 51–60 (West 1986 & Supp.1995) ("FELA"), alleging Conrail's negligence caused him to suffer a stroke. Conrail now moves, pursuant to Fed.R.Civ.P. 56(c), for summary judgment. For the following reasons, I will deny Conrail's Motion.

## I. FACTS

Walsh works as a train conductor for Conrail. On July 16, 1993, after a twelve hour shift, Walsh checked into a hotel in Newark, New Jersey. Later that night, Conrail phoned Walsh's hotel room to call him back to work. Shortly after the call, Walsh suffered a stroke. According to Walsh, Conrail knew, as early as 1991, that he suffered from hypertension. In spite of this physical impairment, Conrail continued to assign Walsh to stressful jobs, the exigencies of which were beyond his physical capacity. This allegedly aggravated his condition and increased the likelihood that he would suffer a stroke.

## II. STANDARD OF REVIEW

When confronting a motion for summary judgment in a FELA case, the Court does not apply the usual standards articulated in Fed.R.Civ.P. 56(c). The nonmoving party can defeat a motion for summary judgment by presenting only a "minimum amount of evidence" in opposition to the motion; "[a] trial court is justified in withdrawing issues from the jury's consideration only in those extremely rare instances where there is a zero probability either of employer negligence or that any such negligence contributed to the injury of an employee." *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 268 (3d Cir.1991) (citation omitted). FELA imposes a stringent duty of care. "Slight negligence, necessary to support a FELA action, is defined as a failure to exercise *great* care, and that burden of proof, obviously, is much less than the burden of proof required to sustain recovery in ordinary negligence actions." *Boeing Co. v. Shipman*, 411 F.2d 365, 371 (5th Cir.1969)

(citation omitted). *See Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st Cir. 1987) (recognizing "the considerably relaxed standard of proof in FELA cases"). The employer's negligence need not be great:

> [T]he test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.... Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury.

*Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506–507, 77 S.Ct. 443, 448–449, 1 L.Ed.2d 493 (1957).

## III. DISCUSSION

Conrail argues that Walsh has failed to produce any expert testimony indicating that the rigors of his work schedule caused his stroke. According to Conrail, Walsh's only evidence of negligence is that physicians, contracted by Conrail, qualified him to return to work on February 4, 1991, two years before his stroke. In support of its Motion, Conrail provided *inter alia* the following submissions: Walsh's Complaint; the "Expert Interrogatories Directed To Plaintiff;" a letter from Dr. Jerry Eric Goldstein, M.D. to Mr. Doran, Walsh's lawyer, discussing Dr. Goldstein's evaluation of Walsh's condition ("Goldstein Letter");[1] and a transcript of Walsh's deposition. Walsh contends that the facts presented in the instant case invoke several possible theories of negligence, all of which illustrate that Conrail failed to provide a safe workplace. Walsh submits *inter alia* two Conrail "Request[s] for Medical Service and Medical Status Report[s]" dated February 4, 1991 and April 11, 1991 which qualify Walsh for work; a letter from Conrail's general attorney instructing that decisions on Walsh's qualification for employment should be made on a purely medical basis; the

---

1. Conrail's attorney (Mr. McDonough) submitted a Verified Statement indicating that after the expert interrogatories were served on Walsh's attorney (Mr. Doran), the parties agreed that expert reports and curriculum vitae would be provided to Mr. McDonough in lieu of formal answers to the expert interrogatories.

Goldstein Letter; and an affidavit signed by Dr. Goldstein reiterating his earlier conclusions.

## A. NEGLIGENCE

■ 45 U.S.C.A. § 51 subjects "common carrier[s] by railroad" to liability in damages to employees suffering injury in the course of their employment when the injury resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C.A. § 51. The traditional common law negligence elements of duty, breach, causation, and damages apply in a FELA action. *Capriotti v. Consol. Rail Corp.,* 878 F.Supp. 429, 431 (N.D.N.Y.1995) (citations omitted). Viewing the submissions within the traditional negligence framework indicates Walsh has satisfied his relatively light burden of pointing to evidence that Conrail acted negligently.

### 1. Duty

■ Under FELA, Conrail owed Walsh several different duties: "[1] to exercise reasonable care in providing a reasonably safe place to work, reasonably safe conditions in which to work, and reasonably safe tools and equipment," *Beeber v. Norfolk Southern Corp.,* 754 F.Supp. 1364, 1368 (N.D.Ind.1990) (citation omitted); "[2] not to aggravate known disabilities in an employee by negligently assigning that employee to work which reasonable men would realize might aggravate his disability," *Massimiani v. Monongahela Railway Co.,* 339 F.Supp. 832, 833 (W.D.Pa.1972); "[3] to assign employees to work for which they are reasonably suited," *Fletcher v. Union Pacific R.R. Co.,* 621 F.2d 902, 909 (8th Cir.1980), *cert. denied,* 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); (4) to perform physical examinations in accordance with the relevant standards of care, *id.* (citation omitted);[2] and "[5] to provide a sufficient number of employees to perform

assigned work." *Beeber,* 754 F.Supp. at 1372 (citation omitted).

The theory of Walsh's case implicates several of the beforementioned duties. Specifically, Walsh argues Conrail inadequately staffed its operations, resulting in a more strenuous work schedule; contracted with physicians who failed to properly evaluate and treat his hypertension; and required him to perform work beyond his capacity and aggravated his hypertension, a known disability.

### 2. Breach

"An employer breaches its duty to provide a safe work place when it knows or should know of a potential hazard in the work place, yet fails to exercise reasonable care to inform and protect its employees." *Gallose v. Long Island R.R. Co.,* 878 F.2d 80, 84–85 (2d Cir. 1989). "The catalyst which ignites this duty is knowledge, either actual or constructive. Thus, an employer is not liable if it has no reasonable way of knowing that a potential hazard exists." *Id.* at 85 (citation omitted). *See also Fletcher,* 621 F.2d at 909 (finding railroad breaches duty to assign employees to work for which they are reasonably suited when it negligently assigns an employee to perform work beyond his capacity; the employee need not show malpractice by the examining physician). Walsh can point to evidence that Conrail breached duties it owed to him as a Conrail employee.

The Goldstein Letter states that Conrail knew of Walsh's hypertension and failed to properly treat it. According to the Goldstein Letter, Conrail qualified Walsh for work in spite of this disability. Specifically,

> Mr. Walsh was known to be hypertensive by the Conrail physicians, yet his medical condition was ignored.... There were multiple such entries within the Conrail Medical records of elevated hypertensive blood pressure, all of which unfortunately were ignored and the obvious consequences ensued.... Despite Mr. Walsh being a hypertensive and not being referred for therapy, counseling, or further diagnostics, Mr. Walsh was fully qualified

---

2. "Generally, a railroad has no duty to ascertain whether an employee is physically fit for his job."

*Id.* The duty comes into effect when the railroad undertakes to provide physical examinations.

and required to work at full capacity at Conrail.

Pl.'s Mem.Opp.Mot.Summ.J.Ex. F ("Pl.'s Mem."). The Goldstein Letter indicates what course of action Conrail's physicians should have taken:

> Even if the Conrail Medical physician[s] could not complete the basic work up themselves, they were obligated to refer the patient, Mr. Walsh, to another physician for a proper work up. None of this was accomplished by the Conrail physicians attending to Mr. Walsh.... Mr. Walsh should have been counseled about exercise, alcohol restriction, weight reduction, dietary salt restriction [etc.].... Any reasonable physician, upon noting hypertension in a patient, would follow the accepted standard of medical care as clearly documented.

*Id.* Walsh's deposition suggests other instances of breach. Walsh testified that on several occasions, his dispatcher would give him a "hard time" if Walsh complained that he did not feel physically fit to perform his duties. Walsh also stated that Conrail failed to hire necessary additional employees, despite the complaints of Walsh and his union that they were understaffed. *See* Def.'s Mot. Summ.J.Ex. E, at 32–37.

### 3. *Causation*

The conclusions reached in the Goldstein Letter suggest a sufficient nexus between Conrail's conduct and Walsh's injury to satisfy the relaxed standards of proof of causation associated with FELA cases. *See Moody v. Maine Cent. R.R. Co.,* 823 F.2d 693, 695 (1st.

Cir.1987) (recognizing that "minimally adequate proof of causation" requires showing that employer negligence played even the slightest role in producing the injury). The Goldstein Letter attributes Walsh's injuries to certain acts and omissions by Conrail:

> [I]t is my professional opinion and with a reasonable degree of medical certainty that Mr. Walsh sustained a stroke as a direct result of his unaddressed hypertension well known to Conrail physicians who consistently examined him periodically and recorded his hypertensive blood pressure while never addressing it.... Mr. Walsh's stroke and subsequent permanent disability would not have occurred had he been offered the accepted medical standard of care for hypertension work up and counseling therapy which was not offered to him by the Conrail Medical Physicians.

Pl.'s Mem.Ex. D. Walsh also submitted an affidavit from Dr. Goldstein verifying the conclusions reached in the Goldstein Letter.[3]

### 4. *Injury*

The record contains evidence illustrating Walsh has suffered an injury. The Goldstein letter states, "Mr. Walsh suffered a life threatening and permanent injury in the form of a cerebral vascular accident (stroke) as a result of the Conrail physicians ignoring of Mr. Walsh's hypertension." Pl.'s Mem.Ex. D.

### B. *JURY QUESTIONS*

█ In enacting FELA, the United States Congress intended to increase the probability that injured workers could present their

---

**3.** Conrail, in arguing that Walsh's failure to show causation demands summary judgment, relies almost exclusively on *Moody.* In that case, plaintiff claimed that his employer, the railroad, caused him to suffer fatigue, depression, and angina by "denying his admission into an engineer training program, assigning him to unattractive locations, denying his qualification on certain runs, and suggesting in a superior's letter that no future employees like plaintiff be selected for training advancement." *Moody,* 823 F.2d at 693. The district court granted summary judgment in favor of defendant, finding plaintiff failed to create a record indicating the existence of a causal connection between either the fatigue or the angina suffered by plaintiff and defendant's actions. The United States Court of Ap-

peals for the First Circuit affirmed, stating "[t]he record does not contain any medical opinion as to causation from any one of the numerous doctors whom plaintiff has consulted, and there is no indication that such evidence is obtainable." *Id.* at 696.

I find *Moody* readily distinguishable. There, the testimony of eight doctors failed to provide any evidence that the harassment from plaintiff's employer caused plaintiff's injuries. The instant case contains adequate proof of causation. The Goldstein Letter, verified by the accompanying affidavit, explicitly states that Conrail knew of Walsh's physical condition, and its failure to provide the medically accepted standard of care led to Walsh's stroke.

cases to juries. *Hines v. Consol. Rail Corp.*, 926 F.2d 262, 269 (3d Cir.1991) (noting Congressional intent to " 'secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions.' Indeed, jury determinations were intended to be part of the FELA remedy") (citations omitted). An analysis of FELA cases reveals a strong tendency to reserve certain issues for jury resolution. Courts have specifically described the following matters as jury questions: "[1] whether the railroad used reasonable care in furnishing its employees a safe place to work," *Gallose*, 878 F.2d at 85; "[2] [w]hether the assignment was negligent," *Fletcher*, 621 F.2d at 909; (3) whether the doctors who qualified Plaintiff were Defendant's "employees," *Dunn v. Conemaugh & Black Lick R.R.*, 267 F.2d 571, 576 (3d Cir.1959); and (4) whether the employer forced the employee to perform tasks beyond the employee's capabilities. *Id.* See also *Hines*, 926 F.2d at 267 (noting "there can be a jury question of causation when there is evidence that *any* employer negligence caused the harm, or, more precisely, enough to justify a jury's determination that employer negligence had played *any* role in producing the harm").

■ In the instant case, questions of fact remain which courts consider the exclusive province of a jury.[4] Accordingly, Conrail's Motion for Summary Judgment shall be denied.

An appropriate Order follows.

### ORDER

AND NOW, this 9th day of April, 1996, upon consideration of the Motion For Summary Judgment of Defendant Consolidated Rail Corporation (Doc. No. 11); and Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Sum-

mary Judgment (Doc. No. 12), IT IS HEREBY ORDERED THAT:

1. Defendant's Motion is DENIED.

### MEMORANDUM

Plaintiff, John F. Walsh, filed a complaint against his former employer, Consolidated Rail Corporation ("Conrail"), under the Federal Employers Liability Act, 45 U.S.C.A. §§ 51–60 (West 1986 & Supp.1995) ("FELA"), alleging Conrail's negligence caused him to suffer a stroke. Conrail now moves for reconsideration of the Court's April 9, 1996 Memorandum and Order ("Order") denying its Motion for Summary Judgment. For the following reasons, I will deny Conrail's Motion.

### I. FACTS

Walsh's Complaint alleges the following. Walsh works as a train conductor for Conrail. On July 16, 1993, after a twelve hour shift, Walsh checked into a hotel in Newark, New Jersey. Later that night, Conrail phoned Walsh's hotel room to summons him back to work. Shortly after the call, Walsh suffered a stroke. According to Walsh, Conrail knew, as early as 1991, that he suffered from hypertension. In spite of this physical impairment, Conrail continued to assign Walsh to stressful jobs, the exigencies of which were beyond his physical capacity. This allegedly aggravated his condition and increased the likelihood that he would suffer a stroke.

Conrail moved for summary judgment, arguing that Walsh's expert report failed "to causally connect [Walsh's] stroke with his railroad work schedule." Def.'s Mot. Summ.J. ¶ 7. This Court denied Conrail's Motion, finding that Walsh had satisfied the relaxed standards of causation associated with FELA cases.[1] Specifically, Walsh's ex-

---

4. See also *Dunn*, 267 F.2d at 575–576 (noting that plaintiff makes out a case for the jury under FELA when railroad management forces a sick employee, of whose illness they knew or should have known, into work for which the employee is unfitted because of this illness); *Beeber*, 754 F.Supp. at 1372 (finding "the jury is entitled to consider that the defendant may have been negligent [in staffing a 100–car train with only two employees, one of whom had recently suffered a hernia] ... knowing that lengthy freight trains

have separated in the past and that this required those employees on board to undertake replacement of the heavy knuckles").

1. There are relaxed standards of proof of causation associated with FELA cases. See *Moody v. Maine Cent. R.R. Co.*, 823 F.2d 693, 695 (1st. Cir.1987) (recognizing that "minimally adequate proof of causation" requires a showing that em-

pert report indicated that Conrail's physicians knew of Walsh's hypertensive condition and failed to properly treat him. The expert report suggested "[d]espite Mr. Walsh being hypertensive and not being referred for therapy, counseling, or further diagnostics, Mr. Walsh was fully qualified and required to work at full capacity at Conrail." Pl.'s Mem. Opp.Mot.Summ.J.Ex. F ("Pl.'s Mem."). The report concluded that "Walsh sustained a stroke as a direct result of his unaddressed hypertension well known to Conrail physicians." *Id.* Based on Walsh's submissions, the Court concluded that Walsh satisfied his relatively light burden of pointing to evidence that Conrail acted negligently.

The Order also noted that FELA jurisprudence imposes several duties on railroad companies. Walsh's case implicated those duties by arguing that Conrail inadequately staffed its operations and thereby imposed a more strenuous work schedule; contracted with physicians who failed to properly treat his hypertension; and aggravated his hypertension by requiring him to perform work beyond his capacity.[2]

## II. *STANDARD OF REVIEW*

■ "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985) (citation omitted), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Federal district courts should grant such motions "sparingly" because of their strong interest in the finality of judgments. *Continental Cas. Co. v. Diversified Indus., Inc.,* 884 F.Supp. 937, 943 (E.D.Pa.1995) (citation omitted).

## III. *DISCUSSION*

### A. *CONSOL. RAIL CORP. v. GOTTSHALL*

#### 1. *Gottshall's Holding*

Conrail argues that the Supreme Court's decision in *Consol. Rail Corp. v. Gottshall,* 512 U.S. 532, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994) disallows Walsh's claims. *Gottshall* presented the following facts. James E. Gottshall's co-worker and long time friend collapsed on the job, suffered a heart attack, and died. Conrail ordered Gottshall's work crew to resume their duties while the corpse lay covered in front of them until the coroner arrived several hours later. Gottshall sued Conrail under FELA for negligent infliction of emotional distress after he suffered depression and post-traumatic stress disorders. The emotional distress caused nausea, insomnia, cold sweats, repetitive nightmares, anxiety, and weight loss. The companion case in *Gottshall* involved Alan Carlisle, another Conrail employee working as the trainmaster in the South Philadelphia yards. Work-force reductions at Conrail required Carlisle to work long, erratic hours, leading him to suffer insomnia, headaches, depression, weight loss, and eventually a nervous breakdown. Like Gottshall, Carlisle sued Conrail for negligent infliction of emotional distress.

The Supreme Court held that "claims for damages for negligent infliction of emotional distress are cognizable under FELA" and remanded Gottshall's case back to the United States Court of Appeals for the Third Circuit to determine whether Gottshall would meet the requirements of the zone of danger test.

---

ployer negligence played even the slightest role in producing the injury).

2. Walsh's Complaint fails to assign specific titles to his two causes of action. The first cause of action, which the Court views as an "inadequate assistance" claim, alleges negligence through a failure to provide a safe place in which to work, to provide the proper tools and training to perform the work, or to assign proper manpower to perform the job. Conrail also allegedly acted negligently in requiring Walsh to perform his duties for twelve (12) hours and then recalling him to perform another twelve (12) hour shift the same day without sufficient time off. The second

cause of action, which the Court considers a claim of "negligent assignment," contends Conrail, through its medical department, returned Walsh to perform regular duties in spite of his hypertension. According to Walsh, Conrail should have properly treated his hypertension and restricted his regular duties but instead aggravated a preexisting physical condition. This amounted to a breach of Conrail's duty to not assign Walsh to strenuous, heavy activity beyond his capacity. Walsh also contends that Conrail failed to conduct its physical examinations with the reasonable care necessary to determine Walsh's fitness for work.

*Gottshall,* 512 U.S. at ——, 114 S.Ct. at 2407. The Supreme Court declined, however, to find a cause of action under FELA in Carlisle's case because his work related stress claim fell outside the "common law's conception of zone of danger." *Id.* at ——, 114 S.Ct. at 2412.

"The zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at ——, 114 S.Ct. at 2406. The Supreme Court refused to "take the radical step of reading FELA as compensating for stress arising in the ordinary course of employment." *Id. Gottshall* stated that FELA did not impose a duty on the railroad to insure the "emotional well being" and "mental health" of its employees; such a result would "dramatically expand employer's FELA liability to cover the stresses and strains of everyday employment." *Id.* at ——, 114 S.Ct. at 2409.

## 2. *Gottshall's Applicability*

The facts presented in the instant case invoke neither the letter nor the spirit of the *Gottshall* decision. The Third Circuit described *Gottshall* as mandating the "application of the common law zone of danger test to determine whether a railroad employer has a legal duty that would enable negligent infliction of emotional distress claims to be made under FELA." *Bloom v. Consol. Rail*

*Corp.,* 41 F.3d 911, 915 (3d Cir.1994). Thus, *Gottshall's* instructional value lies largely in claims for negligent infliction of emotional distress which present the same emotional injuries (albeit with physical manifestations) that Carlisle and Gottshall presented.[3] Justice Thomas carefully limited the reach of *Gottshall* when he specifically delineated the injury which that decision addressed:

> The injury we contemplate when considering the negligent infliction of emotional distress is mental or emotional injury, apart from the tort law concepts of pain and suffering. Although pain and suffering technically are mental harms, these terms traditionally have been used to describe sensations stemming directly from a physical injury or condition. The injury we deal with here is mental or emotional harm (such as fright or anxiety) that is caused by the negligence of another and that is not directly brought about by a physical injury, but may manifest itself in physical symptoms.

*Gottshall,* 512 U.S. at ——, 114 S.Ct. at 2405. *Gottshall* applies to cases alleging *mental* or *emotional* injury which may manifest itself through physical symptoms.

Walsh presents a claim for negligent infliction of a *physical* injury completely distinct from the emotional and mental injuries addressed in *Gottshall.* Walsh supposedly experienced a preexisting physical condition— elevated, hypertensive blood pressure. This condition was brought to Conrail's attention

---

**3.** Ample precedent exists to support this Court's decision to focus on the injury alleged as opposed to the duty purportedly breached and the foreseeability of the accident. *Gottshall* overruled the Third Circuit's "foreseeability approach." Specifically, in upholding Carlisle's FELA claim for negligent infliction of emotional distress, the Third Circuit reasoned that "Carlisle's claim had sufficient indicia of genuineness of emotional injury and that it was reasonably foreseeable that extended exposure to the dangerous and stressful working conditions would cause injury." *Bloom,* 41 F.3d at 914. *Gottshall* declined to follow this approach and instead adopted the zone of danger test for negligent infliction of emotional distress.

Moreover, the Third Circuit has concluded that "at bottom, a decision rejecting liability for emotional injuries can best be explained by focusing on the character of the injury to the employee rather than the nature of the railroad's conduct."

*Holliday v. Consol. Rail Corp.,* 914 F.2d 421, 426 (3d Cir.1990), *cert. denied,* 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1057 (1991). *Holliday* assessed a FELA claim alleging emotional distress with resultant physical manifestations after Conrail assigned plaintiff to a job for which he was not qualified. In the true spirit of the Supreme Court's *Gottshall* decision, *Holliday* found that "[e]ven if recovery could be allowed for emotional injuries without physical impact, the event described, which in itself involved no direct injury to Holliday, no physical impact, and no accident at all, was not sufficiently consequential to support a recovery." *Id.* at 425. *See also Dennis v. Consol. Rail Corp.,* No. CIV.A. 93– 1915, 1994 WL 494453, at *13 (E.D.Pa. Sept. 7, 1994) (stating that the distinction between nonactionable and actionable FELA claims turns on the substance of those claims and not the labels attached to them).

when Conrail physicians examined Walsh. Conrail then negligently assigned Walsh to perform inadequately staffed jobs, the rigors of which were beyond his physical capacity. This aggravated his preexisting condition and caused a purely physical, traumatic injury. Walsh does not assert that Conrail's negligence caused a mental or emotional injury which then manifested itself through physical symptoms, i.e. that depression and post-traumatic stress disorders caused nausea, insomnia, anxiety, and weight loss (Gottshall's case) or working long, erratic hours, led to insomnia, headaches, and eventually a nervous breakdown (Carlisle's case). Indeed, his case does not contain any "emotional" component: notably absent from Walsh's Complaint is any mention of emotional injury.

This Court's decision to distinguish Walsh's claims from the emotional injuries discussed in *Gottshall* finds support in the policy considerations discussed in that decision. The Supreme Court noted that courts throughout the country impose significant limitations on the right to recover for negligent infliction of emotional distress because the possibility of forging such claims is great. In requiring emotional injury claimants to satisfy the common law zone of danger test, *Gottshall* noted that "recognition of a cause of action for negligent infliction of emotional distress holds out the very real possibility of nearly infinite and unpredictable liability for defendants." *Gottshall*, 512 U.S. at ——, 114 S.Ct. at 2405. The Supreme Court feared an explosion of claimants alleging emotional injuries because those causes of action are, unlike physical injuries, often trivial, susceptible to falsification, and unpredictable. *See id.* (also noting that "[b]ehind these limitations lie a variety of policy considerations, many of them based on the fundamental

differences between emotional and physical injuries"). The Supreme Court's concerns are of no moment in the instant case because of the certainty and predictability of the physical injury alleged.

Finally, recognizing Walsh's claims comports with the statute's objective of providing compensation for physical injuries. On remand, the Third Circuit mentioned the Supreme Court's description of FELA: "the Court noted nevertheless that the statute's primary purpose remained the protection of workers from physical, rather than emotional perils." *Gottshall v. Consol. Rail Corp.*, 56 F.3d 530, 534 (3d Cir.1995) ("*Gottshall II* ") (citing *Gottshall*, 512 U.S. at ——, 114 S.Ct. at 2410) (finding that while FELA aims primarily to compensate for physical harm, its "goal of liberal recovery [is] tempered by the statute's emphasis on physical injuries").

### 3. *Too Much versus Too Dangerous*

Conrail argues that *Gottshall* prohibits Walsh's claims which allege that (1) "Conrail was negligent by inadequately staffing its operations which created a strenuous work schedule, and by requiring Plaintiff to perform work beyond his capacity;" and (2) "Conrail negligently assigned the Plaintiff to stressful overwork." Def.'s Am.Mem.Supp.Mot.Recon. at 6, 12. While *Gottshall* purportedly limits the class of potential claimants of negligent infliction of emotional distress to those who actually fall within the relevant zone of danger, several courts have relied on this decision when refusing to recognize a cause of action under FELA to compensate for stress arising in the ordinary course of employment. Decisions subsequent to *Gottshall* exclude claims for injuries resulting from general, work related stress.[4]

4. *See Capriotti v. Consol. Rail Corp.*, 878 F.Supp. 429, 433 (N.D.N.Y.1995) (rejecting FELA claim alleging that the cumulative effect of Conrail staff cut backs, increased responsibility, longer hours, and erratic schedules created a stressful environment which caused exertional or stress related angina pectoris); *Bianco v. Philadelphia, Bethlehem & New England R.R. Co.*, No. CIV.A. 93–4828, 1995 WL 89036, at *4 (E.D.Pa. March 2, 1995) (refusing FELA recovery where plaintiff brought a claim alleging emotional distress and psychological breakdown caused by the rail-

road's requirement that he learn to operate locomotives; the distress allegedly manifested itself through chest and arm pains); *Szymanski v. Columbia Trans. Co.*, No. CIV.A. 93–7423, 1995 WL 329407, at *5 (N.D.Ohio Jan. 30, 1995) (applying *Gottshall* by analogy to claim brought under the Jones Act (46 U.S.C.A. § 688) (West 1975 & Supp.1996) (Recovery for injury to or death of seamen) where plaintiff alleged physical injuries—ulcers, bowel obstruction, abdominal injuries, and death—resulted from inordinately ardu-

Admittedly, dicta in *Gottshall* suggests that Walsh could not base a claim on allegations that Conrail's failure to generally provide Walsh with adequate assistance (inadequate staffing) caused a strenuous work schedule, the stress of which led to a stroke. Similarly, Walsh could not sustain a FELA claim by arguing that Conrail negligently assigned him to stressful jobs which caused his stroke. *See Gottshall,* 512 U.S. at ——, 114 S.Ct. at 2409 (finding no support for the imposition "of a duty to avoid creating a stressful work environment"); *Holliday,* 914 F.2d at 424 (noting "plaintiffs who allegedly suffer from stress related physical or purely emotional injuries or illness caused by their general working conditions fail to state a claim under FELA") (citation omitted); *Dennis,* 1994 WL 494453, at *13 (noting "in the wake of *Gottshall,* any emotional injuries resulting from Conrail's alleged failure to provide adequate assistance are not actionable").

■ Conrail, however, mischaracterizes Walsh's claims. While FELA does not provide relief for victims of routine, job related stress, Walsh does not request such relief. Rather, he alleges that inadequate medical treatment aggravated a known physical condition, and this aggravation acted in conjunction with negligent assignment and inadequate assistance to produce a traumatic physical injury. Indeed, such evidence supports a viable claim under FELA.

In refusing to entertain claims which assert nothing more than job related stress, *Gottshall* and its progeny draw a distinction between FELA claims alleging that the railroad assigned "too much" work and those alleging that the railroad assigned work that was "too dangerous." *See Gottshall,* 512 U.S. at ——, 114 S.Ct. at 2412 (rejecting Carlisle's claim because it alleged "that he had been given too much—not too dangerous—work to do") (citation omitted). Courts will not find a FELA claim when plaintiff alleges that the cumulative effect of the job's responsibilities created a stressful environment which caused injury, i.e. "too much

work." *See Capriotti,* 878 F.Supp. at 433 (refusing "cumulative effect" claim in the absence of a particular dangerous condition); *Szymanski,* 1995 WL 329407, at *5 (rejecting FELA claim of "physical illness due to overwork"). *Dennis* elaborated on this proposition:

> [Dennis] was not allegedly injured because she was required to perform one single, discrete task that should have required the assistance of several other employees. Rather, at its core, her insufficient assistance claim turns upon the cumulative and excessive nature of the individual tasks she was required to perform.... There may well be some abstract moment when non-actionable "too much work" becomes actionable "too dangerous work." Indeed, the distinction between "too much" and "too dangerous" work would seem to exist more on an analytical than a practical plane. The continuing viability of that distinction is not, however, in doubt.

*Dennis,* 1994 WL 494453, at *12–13.

In cases falling on the "too dangerous" side of the equation, plaintiffs pointed to discrete and specific tasks which were too dangerous to perform. Walsh presents such a case. Conrail's negligent diagnosis and treatment of Walsh' hypertension converts his case from "too much work" into a claim that continued employment in Walsh's present position was "too dangerous." Conrail subjected Walsh to the immediate risk that his hypertension might lead to a stroke and greatly increased the probability that he would experience a traumatic injury. Walsh thus identifies a particular, discrete condition of his employment that made his job "too dangerous."

### 4. *Duties Breached*

Had Walsh presented the Court with a claim of mental or emotional injury with secondary physical manifestations, *Gottshall* would have provided the appropriate analytical framework. Because Walsh alleges that *purely physical* injury resulted from Con-

ous labor and general stress; declining to allow claim for physical illness due to overwork); *Barlette v. Consol. Rail Corp.,* No. CIV.A. 92–251S, 1994 WL 721342, at *4 (W.D.N.Y. Dec. 6, 1994)

(disallowing claim for emotional distress with physical manifestations because claimant fell outside zone of danger).

rail's negligence, the Court must examine the duties FELA imposes and determine if Conrail has breached them. *See* 45 U.S.C.A. § 51 (West 1986) (subjecting railroad to liability for negligence which causes injury);[5] *Capriotti*, 878 F.Supp. at 431 (noting "[t]he traditional common law negligence elements of duty, breach, causation, and damages apply in a FELA action").

In denying Conrail's Motion for Summary judgment, this Court noted that under FELA, Conrail owed Walsh the following duties: "[1] to exercise reasonable care in providing a reasonably safe place to work, reasonably safe conditions in which to work, and reasonably safe tools and equipment," *Beeber v. Norfolk Southern Corp.*, 754 F.Supp. 1364, 1368 (N.D.Ind.1990) (citation omitted); "[2] not to aggravate known disabilities in an employee by negligently assigning that employee to work which reasonable men would realize might aggravate his disability," *Massimiani v. Monongahela Railway Co.*, 339 F.Supp. 832, 833 (W.D.Pa. 1972); "[3] to assign employees to work for which they are reasonably suited" and "physically qualified," *Fletcher v. Union Pacific R.R. Co.*, 621 F.2d 902, 909 (8th Cir.1980), *cert. denied*, 449 U.S. 1110, 101 S.Ct. 918, 66 L.Ed.2d 839 (1981); *Gottshall II*, 56 F.3d at 532 n. 1; (4) to perform physical examinations in accordance with the relevant standards of care, *id.* (citation omitted);[6] and "[5] to provide a sufficient number of employees to perform assigned work." *Beeber*, 754 F.Supp. at 1372 (citation omitted) (noting "defendant may have been negligent ... in putting an employee, who had recently sustained a previous hernia injury, on a 100 car train with only two other employees").

*Gottshall*'s dicta suggests that FELA does not impose a duty on Conrail to avoid creating a stressful working environment. This Court, however, neither charges Conrail with a general duty to protect Walsh from the stresses and strains of everyday employment nor seeks to transform FELA into an "insurance" statute, making Conrail "the insurer of the safety of [its] employees while they are on duty." *Gottshall*, 512 U.S. at ——, 114 S.Ct. at 2404. But where Conrail has breached one of the beforementioned traditional and recognized duties, and a nexus exists between the breach and the resulting injury, a FELA claim exists so long as Conrail's breach played even a slight role in causing the physical injury. This remains true even if the stress of general working conditions acts in concert with Conrail's breach and plays an intervening and contributory role, albeit a minor one, in producing the injury.

*Dennis* illustrates this point. Dennis presented *inter alia* a claim for negligent infliction of emotional distress arising from prolonged and unreasonably dangerous work-related stress and inadequate and unsafe equipment. To Conrail's knowledge, Dennis underwent cervical fusion surgery and suffered from osteoarthritis and fibromyalgia. She contended that Conrail aggravated her preexisting medical condition by requiring her to spend a significant amount of time working on a computer work-station whose design increased symptoms associated with her arthritis and fibromyalgia. *Dennis* discussed the interplay between a claim that the general stress of insufficient assistance led to her physical injuries and a standard claim for unsafe equipment:

> Dennis argues that the aggravation of her preexisting physical medical conditions was not a derivative result of any emotional distress associated with her allegedly excessive duties, but rather was a direct result of the physical toll of performing those duties without proper assistance. In this sense, her insufficient assistance claim overlaps significantly with her unsafe equipment claim: she was allegedly in-

**5.** Section 51 subjects railroads to liability in damages to employees suffering injury in the course of their employment when the injury resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C.A. § 51.

**6.** "Generally, a railroad has no duty to ascertain whether an employee is physically fit for his job." *Id.* The duty comes into effect when, as in the instant case, the railroad undertakes to provide physical examinations.

jured not only because Conrail's failure to provide her with a computer work-station required her to operate her computer equipment in an unsafe manner (unsafe equipment claim), but also because Conrail's failure to provide her with sufficient assistance required her to work excessive hours on the allegedly unsafe computer equipment (insufficient assistance claim). *Dennis,* 1994 WL 494453, at *14.

In alleging that Conrail negligently treated his hypertension and qualified him for work in spite of his physical incapacity, Walsh presents an analogous case to *Fletcher.* Fletcher sustained back injuries shoveling rocks as a section-hand. Nonetheless, the railroad's doctors repeatedly reassigned Fletcher to perform the same heavy work. This continued for several years until a neurologist diagnosed "chronic degenerative lumbar intervertebral disc or chronic lumbar strain." *Fletcher* found that the railroad breached its duty to assign employees to work for which they are reasonably suited by requiring Fletcher to perform work beyond his capacity. *Id.* at 909 (citing *Massimiani v. Monongahela Railway Co., Inc.,* 339 F.Supp. 832, 833 (W.D.Pa.1972) (concluding "the railroad has a duty not to aggravate known disabilities in an employee by negligently assigning that employee to perform work which reasonable men would realize might aggravate his disability")). The railroad acts negligently if it knows or should have known that the assignment exposed the

employee to an unreasonable risk of harm. *Id.* (citing *Dunn v. Conemaugh & Black Lick R.R.,* 267 F.2d 571 (3d Cir.1959) (imposing liability where trackman who underwent major abdominal surgery—and the railroad knew of the surgery—was assigned by railroad to perform heavy lifting which resulted in ventral hernias)). *Fletcher* also commented on the railroad's duty to conduct its medical examinations with the appropriate level of care.[7]

Similarly, Walsh presents the Court with an expert report as evidence suggesting that inadequate and negligently administered medical care, vis a vis sending him back to a job in light of his hypertension, played a role in Walsh suffering a stroke. According to the expert report, Walsh sustained a stroke as a direct result of his unaddressed hypertension. *See* Pl.'s Mem.Opp.Mot.Summ.J.Ex. F. The expert report raises genuine issues of material fact that, if viewed in a light most favorable to Walsh, establish a FELA claim for the beforementioned reasons. The expert report posits that in reassigning Walsh to perform the same exacting tasks for which he was unqualified, Conrail breached its judicially recognized duties to provide the appropriate standard of medical care, assign Walsh to perform jobs within his physical capacity, and adequately staff its operations.

While the general stress of Walsh's employment may have intervened and contributed to the physical injuries he sustained, construing the facts in Walsh's favor, Conrail's

---

7. While Conrail owed Walsh a duty to conduct Walsh's medical examinations with the appropriate level of care, the Court recognizes the limitations on this responsibility. While this duty may include "a specific duty to *advise* an examinee that further medical supervision is necessary for his well being, it has never been thought to require that an employer *compel* a competent adult patient to submit to further treatments or examination." *Fulk v. Illinois Cent. R.R. Co.,* 22 F.3d 120, 124–125 (7th Cir.) (affirming summary judgment against a paragraph in plaintiff's complaint alleging, "the Defendant with knowledge of decedents high blood pressure and hypertension should have had him examined more frequently with more detailed examinations to determine his physical ability to [perform his duties without danger]"), *cert. denied,* — U.S. —, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994). Conrail agrees that FELA allows claims for the negligent administration of medical care but con-

tends that Walsh did not plead this claim in his Complaint. A reading of the Complaint compels a different conclusion. *See* Pl.'s Compl. ¶¶ 15–16 (claiming "[Conrail] through its medical department ... knew of the existence of plaintiff's aforesaid hypertension and the potential consequence of note evaluating and/or treating the condition, and [despite this hypertension, Conrail's medical department returned him to regular duties]"); 20(g) (averring "[Conrail] [n]egligently failed to conduct physical examinations of the plaintiff with reasonable care necessary to determine the fitness of the plaintiff to perform the job for which he was assigned").

The Court notes, however, that *Fulk* prohibits Walsh from presenting the allegation contained in ¶ 20(f) of the Complaint: "[Conrail] negligently failed to perform an adequate number of physical examinations on the plaintiff." Pl.'s Compl. ¶ 20(f).

breach of the beforementioned traditional duties caused those injuries. Accordingly, FELA provides Walsh with the appropriate remedy to compensate for physical injuries sustained as a result of Conrail's negligence.[8]

### ORDER

AND NOW, this 20th day of May, 1996, upon consideration of Defendant's [original and] Amended Motion for Reconsideration of the Court's Order Dated April 9, 1996 and Entered April 12, 1996 Denying Defendant's Motion for Summary Judgment (Doc. Nos. 19 and 23 respectively), Plaintiff's Response thereto (Doc. No. 22), Defendant's Supplemental Memorandum (Doc. No. 26), Plaintiff's response thereto (Doc. No. 27), and oral argument held on the Record May 2, 1996, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion is DENIED.

---

**8.** Because *Capriotti* presents similar, but distinguishable facts, it warrants slight digression. After having suffered two heart attacks and open heart surgery several years before, Capriotti began to experience more heart complications, requiring him to go on sick leave. He sued Conrail, alleging that the cumulative effect of Conrail staff ·cut backs, increased responsibility, longer hours, and erratic schedules created a stressful environment which caused exertional or stress related angina pectoris. The court found Capriotti outside the zone of danger and precluded his claim.

Walsh's predicament in no way mirrors *Capriotti*. Capriotti contended that the general stress of his employment—alone without the breach of any additional, recognized duties—led to an emotional injury which manifested itself through physical symptoms. The record in Capriotti did not reveal that Conrail physicians undertook a duty to treat Capriotti, and Capriotti did not suffer a traumatic injury as a result of Conrail's negligence.